Mr. Smith, good morning. You may proceed. Thank you. Good morning, Your Honors. Joining me this morning is my colleague, Mr. Aaron Parker, and may it please the Court. The Court of Appeals for Veterans Claims misinterpreted 38 U.S.C. 353 in reaching the decision now on appeal. The full text of that statute is cited on page 18 of the blue brief. There is no dispute between the parties that Mr. Ruiz was entitled and is entitled to the presumption of soundness under Section 1111, which also was 311 at that time. What's the misinterpretation of the statute? I'm sorry, Your Honor. What is the misinterpretation of the statute? The misinterpretation of the statute, Your Honor, is that a medical opinion simply saying there was no aggravation satisfies the statute. The statute... They have more than that. They have the medical opinion and the veteran himself agreed that his condition was not service aggravated back in 1979. I believe what he said in 79, Your Honor, was that it preexisted, wasn't it? He had had schizophrenia... I think he said not service is neither incident to nor aggravated by my military service. He signed a statement in which I believe it says, I have been informed that, not that he made it admission. And in any event, the VA regulations at the time provided that such a signed statement by a veteran could not be used against him. The problem with the Court of Appeals for Veterans Claims decision is that the statute sets out a two-part test for rebutting the presumption with respect to aggravation. First, the government has the opportunity to show that there was no increase in disability during service. If they meet that standard, the case is over. If they fail to show that there was no increase in disability during service, they get a second opportunity, and that is to show that the increase was due to the natural progress of the condition. Now, this court has affirmed that in the Wagner decision and said expressly those are the conditions for rebuttal. And your view is that Wagner's interpretation is simply a reflection of what the law always held and therefore applies even in this case. Exactly, Your Honor. Effectively retroactive. Well, we're not necessarily. I mean, we can certainly make the argument, I believe we have, that Wagner does apply retroactively. I'm aware of the Jordan decision, obviously, and we filed a supplemental authorities letter yesterday with respect to Patrick. But our argument is simply that the statute, we are challenging the statute as, the interpretation of the statute as it existed at the time. And therefore, that is the clear and unmistakable error if it was misapplied. Now, the Court of Appeals for Veterans Claims said that the statute was not misapplied because it was correctly rebutted, aggravation was rebutted because there was a medical opinion saying that there was no aggravation. We don't dispute that. What we're saying is that for legal purposes of adjudicating the claim, aggravation is only rebutted if the two-part standard is met. A, there must have been no increase in disability during service, or if there was an increase, there's medical evidence that there was no, that the increase was due to the natural progress of the disease. So when the Court of Appeals for Veterans Claims, after, by the way, citing that law and acknowledging that standard, which it did, then said, no, the medical opinion alone without making the subsidiary findings is sufficient. You're out of here. That essentially reads the statute out of the law. You don't have to meet either of those standards. All you have to do is have a medical opinion saying no aggravation. Now, we don't know what medically the doctors meant. They may have, for all we know, meant there was no incident of service. But the problem is we don't have fact jurisdiction. And whether that kind of statement by the medical staff back in 1979 should be sufficient to rebut the aggravation or not is a fact question, isn't it? You're correct. And you do not have jurisdiction over that. But you do have jurisdiction to look at the statute and see that neither of the subsidiary findings was ever made. Aggravation exists as a matter of law. I'm sorry. The rebuttal of aggravation has been satisfied. The government has met its burden to show there was no aggravation. If and only if it can show there was no increase in disability, if they fail that, that any increase was due to natural progress. Even in 1980, that's how that checking of the no aggravation box was interpreted, is to encompass both of those prongs, was it not? It was. And the question is whether that interpretation was clearly and unmistakably erroneous. Whether the statute, as written, as existed, was misapplied at that time. The Court of Appeals for Veterans Claims says no, it wasn't. We say that in any case where, including this one, where the only evidence to rebut the presumption of aggravation is a medical statement that does not include evidence supporting one or both of these prongs, simply means that we can take this statute out of the law because veterans do not benefit from it. Mr. Ruiz was entitled to prevail unless one or both of those conditions were met. So the clear and unmistakable error has to be in the fact that the medical opinion doesn't actually discuss both of those prongs? No, I don't think you can have clear and unmistakable error with respect to how facts were weighed or evaluated. The clear and unmistakable error is that the, well, the Court of Appeals for Veterans Claims erred when it affirmed the decision without correctly applying, misinterpreting, and therefore misapplying this statute. What the court should have done was look to see whether these standards were met based on the evidence that existed in 1980. And I'd like to say that I've asked for some aggressive relief at the conclusion of my brief. I'd like to retract that and simply say that I believe the correct decision would be for the court to vacate the Court of Appeals for Veterans Claims decision and remand with an instruction for it to make findings in light of the correct law whether the presumption of aggravation was rebutted based on the clear terms of Section 353 as adopted by this court in Wagner. Now, are you arguing that the Board's rating decision and particularly the language on page 1804 of the appendix that says medical evidence of record reflects that the best condition was aggravated by military service is an indication that the wrong standard was applied? Yes, Your Honor. We've made that argument. However, the court, and I think that's right, because the burden as this court has held is always on the government to rebut the presumption. There's no obligation on Mr. Ruiz's part to submit evidence of aggravation. The presumption fills the evidentiary void. But the Court of Appeals for Veterans Claims didn't reach and decide that. That's not before the court at this time, and we are not going so far as to say the court should rule on that. All the Court of Appeals for Veterans Claims did was say that absent these findings required by the statute, nonetheless, the government satisfied its burden to prove there was no aggravation. We say that cannot be correct if this statute has meaning as interpreted by this court in WACC. Thank you. All right. I'm sorry, Your Honor. Were you about to ask me? No, I was just... Oh, good. Thank you. Thank you.  We'll reserve the rest of your time, Mr. Austin. Thank you, Your Honor. May it please the Court. The Veterans Court correctly held the Board's conclusion that there was no clear and unmistakable evidence for CUE in the RO's 1980 decision was not arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law. And Patrick resolves the retroactivity issue. Well, Your Honor, that's, of course, an issue we don't think the Court of Appeals for Veterans Court has to reach, but probably yes. I mean, our argument, our contingency argument in our brief was based in large part upon Patrick being incorrectly decided. Given that it was a Federal Circuit decision, we could only make such an argument if it was an unpublished, non-precedential opinion. In December, this Court, in the attorney fees decision, came down and issued a precedential opinion in Patrick in which it quoted the non-precedential decision. So I think, essentially, it would have to be an issue, if we were to take it up, that would be decided unlawfully. But even before Patrick, you conceded that Wagner, in this case, that Wagner was retroactive. That's true, and we addressed that in a footnote. That is a problem, and that's why we acknowledged it in our brief. But after that, we realized that we had erred in light of Jordan and did contest the issue But obviously, somebody reading Wagner at least made the informed decision, or the intellectual decision, that it appeared to be retroactive on its face. Well, I think it was more a decision based upon Patrick, that Patrick and Jordan were conflicting at that point, and that Patrick was binding. Then we said, well, we think Jordan was correctly decided, and Patrick wasn't binding. Right, but Jordan only talked about the regulation, not the statute. Well, that's obviously how the Patrick decision distinguished it. If the court feels there's any tension between Jordan and Patrick, we would contend that Jordan has to govern, because it was the first decided decision. But if the court feels that it's bound by what Patrick said, certainly the panel cannot reverse that. It would have to be something that, if the Solicitor General gives us permission, and we decide to, and the VA wants to, that we would take on bond. But the court doesn't have to reach that here. Yeah. What is your position, assuming that Wagner applies? Assuming Wagner applies, it's our position that the claim fails, because the RO found that there was no aggravation. And given the law of this court, concerning the court's jurisdiction, and the law of this court concerning CUE, that that decision is dispositive. Now, obviously, we can't get into an assessment of the facts, but we can certainly address the question of whether there was a total absence of evidentiary support. So where is the evidence in the medical record? Absolutely, Your Honor. Under Walter, it's clear the court can entertain that inquiry. The evidence is the board's finding that there's no aggravation. Well, the evidence is not the board's finding. The medical record. The question is, what is it in that medical report, the report of the medical board, that is evidence of lack of aggravation? Remember, the medical board is equivalent to a doctor making a finding. The medical board says there's no service aggravation. Well, they checked off a box. Well, they did more than that. They did more than that, Your Honor. There's about four or five different indications other than the box. And I would also say, with respect to the box, once you question whether or not the box is enough to rebut the presumption, you're going to whether or not that meets the clear and unmistakable standard, which this court does not possess jurisdiction to entertain. But the statute we have to apply is that there has to be a specific finding that the increase in disability is due only to the natural progress of the disease. Actually, Your Honor, the court does not have to. And that's because of the Natalie decision, which Mr. Ruiz doesn't cite in either his opening brief or his reply brief, despite the fact that we rely upon it. And what this court said in Natalie is that prior to the Veterans Benefits Amendment in 1989, that the RO was not required to make the specific findings that Mr. Ruiz complains about here. This court said in Natalie that the RO didn't even have to cite to the statute of sound condition in Section 1111 or Aggravation 1153. It didn't have to cite to any of that. It doesn't have to indicate what standard of proof it applied. It doesn't have to do any of those things. So they're trying to ask this court to basically look at this case as if it were on direct appeal. And if it were a board decision on direct appeal and the board had come down and issued a decision similar to this and had not articulated the statute and had not said we're applying a clear and unmistakable standard and had said, you know, had not articulated perhaps the specific findings, whether its decision of no aggravation was based upon no increase in severity of disease or if there was such an increase it was beyond the normal progression of the condition, there might be a very good argument that Mr. Ruiz could make that this court should remand that case back to the board for those specific findings. But that's not the case we have here. We have a case of CUE. It is simply not clear and unmistakable error for the board, the RO, to rely upon a medical board's finding of no aggravation. There's no service aggravation and say that that's clear and unmistakable error. My question wasn't to whether or not the board made that finding because the board appears to have made that finding. The question is whether there was any medical evidence to support that finding. Well, the medical board is medical evidence. Was there a medical finding to that effect? Yes. Just the checking of the box? Other than the check? Well, for example, the page A1874, the medical board in the clinical record says this was not service aggravated, a specific finding on page 1874. The board also says on page 1804, 1804, 1871, I'm sorry, that the EPTS, which means existing prior to service condition, is not considered to be service aggravated. And as Your Honor indicated in the earlier discussion, they had Mr. Ruiz sign a form in which he acknowledged that he had been told that his reason for terminating service was due to the fact that he didn't have a pre-existing condition that was not aggravated by service. But these are all conclusions. That's right. It's just simply a conclusion. So the question is what is the evidentiary basis on which one could reach that conclusion? Well, now, in my view, Your Honor, you're now going beyond the conclusion into the persuasiveness of the medical board's evidence. This is like a doctor's opinion. Well, I'm looking for just the existence of some medical evidence, not necessarily the persuasiveness of it. Okay. Well, but if it goes to what was the basis for the medical board's conclusion that it wasn't service aggravated, which I don't believe in court jurisdiction, but it is there regardless. That's what I'm looking for. Okay. Just one little thing that suggests there's a basis for that conclusion. Well, the Veterans Court cited to this evidence, which is on page A-1873, where it talks about the fact that, of course, in the medical board's opinion, he had this pre-existing condition because he'd had this condition in South America. And it says he showed rapid resolution of the psychotic symptoms after being treated with individual therapy, group therapy, milieu therapy, and neuroleptic medications. That just indicates he responded to therapy. He didn't. That doesn't necessarily address. It doesn't necessarily address it. Whether this was aggravated or not. Well, it supports it. And there's no finding of this, but it's evidence that supports it, because you have an underlying condition which had an acute recurrence, which then resolved, which under this court's law, under Davis and Veterans Court cases, were told similarly a temporary flare-up of the symptoms is not an aggravation. Now, is there a specific finding by the RO to this effect? The answer is no. There isn't. But it is a basis upon which the medical board and the RO could have concluded that there simply was no aggravation, no increase in severity and soreness. Well, what's the relationship between lack of aggravation and the fact that he responded to a treatment when he was being hospitalized? Because that would be a temporary flare-up of the symptoms. In other words, he has a baseline condition. It gets worse when he's not taking his medications. He's put back on his medications, and he goes back to the baseline condition. Right. But that doesn't address the question of whether there was aggravation. Well, it suggests, again, I'm not saying there's a conclusion. It suggests the basis for a conclusion that there was no permanent aggravation. It addresses some of the evidence that might otherwise have supported the finding of aggravation. That's right. That's right. And alternatively, then you look to the second question. Again, we don't think you reach this. We think the mere conclusion by a medical board that there's no serious aggravation is enough right there and there to end the inquiry. But if you go to the second question, if we assume for the purpose of argument that, in fact, the medical board believed there was an increase in the severity of the disease, what other basis is there for its conclusion of no service aggravation other than it didn't proceed beyond the normal progression of the disease? There's no other basis for aggravation. And, in fact, that is precisely what the RO found. The RO, in fact, made these precise findings because it found that the evidence fails to show that the veteran's condition was aggravated by military service beyond the normal progression of disease. And what that finding by the RO is, it doesn't specify whether that could be either. It could be because the RO concluded from the medical record that there was no increase in the severity of the disease, or it could be that the RO concluded that there was an increase in the severity of the disease, but it was not beyond the normal progression of the disease. Either one of which would be a basis for finding no aggravation. And the RO, under the Natalie decision, doesn't have to articulate which of those two standards, which of those two reasons applies. And with respect to their burden of proof argument, if you look at the Natalie decision, this is precisely the same decision, the same evidence, the same standard that was applied by the RO in Natalie. It was arguably allocating the burden of proof to the claimant, which arguably would be a basis on a direct appeal to remand to say, make sure you apply the correct standard. But this court said in Natalie, this is a CUE. This is before 1989. The Veterans Benefits Amendment didn't apply. RO, you don't have to articulate that. And here, unlike Natalie, the RO actually articulated the standard, and that is that the condition was not aggravated by military service beyond the normal progression of disease. After making a specific factual finding, and this is earlier on the page on 1804, where the RO states, talking about the medical boards and medical findings, it was further indicated that the condition existed prior to service and was not aggravated by active duty beyond the normal progression of disease. So the RO clearly read the medical board's opinion to say that it was not aggravated beyond the normal progression of disease. Mr. Ruiz's only argument, Your Honor, is that the RO and the medical board were required, as a matter of law, in order to meet the Walter standard, to articulate the basis for the no-aggravation finding. In other words, it has to be based on one of two things. There was no increase in severity of the condition during service, or if there was such an increase, it was beyond the normal progression of the disease. That is simply wrong as a matter of law under Natalie. The RO did not have to make that type of articulation prior to 1989. And again, if this were direct appeal, they'd have a point. They would have a point because the board would be required to use the correct standard and apply it. But it's not clear and unmistakable error for the RO to conclude, based upon a medical board finding of no service aggravation, that the presumption was rebutted. And it's interesting to contrast this with the situation in 1992, in which the board awarded service connection for schizophrenia. And at that time, based upon evidence that appeared after 1980, Mr. Ruiz came to the board and said, look, this history I gave about having a pre-existing condition in Columbia, South America, was wrong. I didn't have a pre-existing condition. And here's my affidavit and my testimony where I said this. They produced a 1980 hospitalization, which did not include that pre-existing history and statements from neighbors. And the board said, you know what? Now the evidence is in equipoise. We've got the history given to the medical board in 1979. We've got this contrary testimony. And based upon that, the presumption of sound condition is such that it hasn't been rebutted as a matter of law. And therefore, we're going to award you service connection. That contrary evidence was not before the R.O. or the medical board in 1979. It was unrebutted evidence that there was this pre-existing condition and that it did not aggravate the condition of service. Unless the court has any other questions, we respectfully ask that the decision of the Veterans Court be affirmed. Okay, thank you very much. Mr. Smith, you have the last word. Thank you. Thank you, Your Honor. If the 1980 regional office decision had included a statement that the veteran's disability did not increase in severity during service, there was no increase in disability, or failing that, stated that there was a specific finding that there had, or specific finding that the increase was due to natural progress of the condition, that would be the end of this case and Natalie would control because the court would not look beyond that. In order to rule in the way the government has asked this court to do, you have to go beyond Natalie. Not only did the board not have to explain the basis of its decision, it didn't have to follow the law at all. It did not have to make the findings that were required. Natalie says the board doesn't have to go into detail and explain the basis for those findings. It doesn't have to point to evidence. It simply has to make a decision. It didn't make a decision. It reached a conclusion based on a conclusion and on the basis of that, it said that it satisfied its statutory obligation and was able to rebut the presumption of sound condition. That's absolutely incorrect. What the government has asked you to do is reach back into the statute, tear 353 out, and throw it away. I respectfully submit not only should you not, but you cannot. Thank you. All right. Thank you very much. The case is submitted. That concludes our session this morning.